## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**DEBORAH DARLENE THOMPSON,**

      **Plaintiff,**

      **vs.**                         **Civ. No. 20-1020  JFR**

**KILOLO KIJAKAZI, Acting Commissioner,**
**Social Security Administration,**

      **Defendant.**

### MEMORANDUM OPINION AND ORDER[1]

    **THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 22)[2] filed May 7, 2021, in connection with Plaintiff's *Motion to Reverse or Remand Administrative Agency Decision, With Supporting Memorandum of Law,* filed July 12, 2021. Doc. 25. Defendant filed a Response on October 7, 2021. Doc. 29. Plaintiff filed a Reply on October 25, 2021. Doc. 30. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds that Plaintiff's motion is not well taken and shall be **DENIED.**

### I.  Background and Procedural Record

    Plaintiff Deborah Darlene Thompson ("Ms. Thompson") alleges that she became disabled on January 1, 2017, at the age of sixty years and seven months, because of carpal tunnel

---

[1]  Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case.  (Docs. 4, 8, 9.)

[2] Hereinafter, the Court's citations to Administrative Record (Doc. 22), which is before the Court as a transcript of the administrative proceedings, are designated as "Tr."

syndrome, post-traumatic stress disorder ("PTSD"), anxiety disorder, herniated disk, back problem, osteoarthritis in shoulder, osteoarthritis in left knee, neck problem, diabetes, and depression.  Tr. 88, 89, 272.  Ms. Thompson completed high school in 1975.  Tr. 273. Ms. Thompson worked as a sales associate in convenience stores and as a housekeeper.  Tr. 274, 280.  Ms. Thompson stopped working on December 1, 2017 "because of other reasons."[3]  Tr. 273.

On January 11, 2018, Ms. Thompson protectively filed applications for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq*. and for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 et seq.  Tr. 20, 248-49, 250-51.  On August 30, 2018, Ms. Thompson's applications were denied.  Tr. 86, 87, 88-104, 105-121, 162-66.  They were denied again at reconsideration on March 27, 2019.  Tr. 122, 123, 124-41, 142-59, 171-73, 178-80.  Upon Ms. Thompson's request, Administrative Law Judge (ALJ) Michael Leppala held a hearing on January 21, 2020.  Tr. 44-85.  Ms. Thompson appeared at the hearing with attorney representative Crystal Flynn.[4]  *Id*.  On May 13, 2020, ALJ Leppala issued an unfavorable decision.  Tr. 17-37.  On August 7, 2020, the Appeals Council issued its decision denying Ms. Thompson's request for review and upholding the ALJ's final decision.  Tr. 1-6.  On October 6, 2020, Ms. Thompson timely filed a Complaint seeking judicial review of the Commissioner's final decision.  Doc. 1.

---

[3] Ms. Thompson testified she stopped working after being terminated from her position as a cashier at Bien Mur for a rule violation.  Tr. 55.

[4] Ms. Thompson is represented in these proceedings by Attorney Francesca MacDowell.  Doc. 1.

## II.  Applicable Law

### A.      Disability Determination Process

An individual is considered disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also* 42 U.S.C. § 1382(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals).  The Social Security Commissioner has adopted the familiar five-step sequential analysis to determine whether a person satisfies the statutory criteria as follows:

> (1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[5]  If the claimant is engaged in substantial gainful activity, she is not disabled regardless of her medical condition.
>
> (2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s).  If the claimant does not have an impairment(s) or combination of impairments that is severe and meets the duration requirement, she is not disabled.
>
> (3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement.  If so, a claimant is presumed disabled.
>
> (4) If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform her "past relevant work."  Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1).  This is called the claimant's residual functional capacity

---

[5] Substantial work activity is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a).  "Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." *Id.*  "Gainful work activity is work activity that you do for pay or profit."  20 C.F.R. §§ 404.1572(b).

3

("RFC"). *Id.* §§ 404.1545(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work. Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.

(5) If the claimant does not have the RFC to perform her past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5, 107 S.Ct. 2287, 2294, n.5, 96 L.Ed.2d 119 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

   **B.**   <u>**Standard of Review**</u>

The Court reviews the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). A decision is based on substantial evidence where it is supported by "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley*, 373 F.3d at 1118, or if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371,

1374 (10th Cir. 1992).  Therefore, although an ALJ is not required to discuss every piece of
evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the
[ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient
particularity." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).  Further, the decision
must "provide this court with a sufficient basis to determine that appropriate legal principles
have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005).  In undertaking
its review, the Court may not "reweigh the evidence" or substitute its judgment for that of the
agency.  *Langley*, 373 F.3d at 1118.

### III.  Analysis

The ALJ made his decision that Ms. Thompson was not disabled at step four of the
sequential evaluation.  Tr. 35-36.  The ALJ determined that Ms. Thompson met the insured
status requirements of the Social Security Act through December 31, 2022, and that she had not
engaged in substantial gainful activity from her alleged onset date of December 1, 2017.  Tr. 23.
He found that Ms. Thompson had severe impairments of bilateral shoulder dysfunction,
degenerative and arthritic changes of the cervical spine, diabetes mellitus, depression, and PTSD.
*Id.*  The ALJ also found that Ms. Thompson had nonsevere impairments of carpal tunnel
syndrome, hyperlipidemia, hypertension, back problem, osteoarthritis in the left knee, obesity,
alcohol abuse, and mild neurocognitive disorder.  Tr. 24-25.  The ALJ determined, however, that
Ms. Thompson's impairments did not meet or equal in severity any of the listings described in
the governing regulations, 20 CFR Part 404, Subpart P, Appendix 1.  Tr. 25-28.  Accordingly,
the ALJ proceeded to step four and found that Ms. Thompson had the residual functional
capacity to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that
> the Claimant is capable of occasionally lifting and/or carrying 20 pounds,

5

frequently lifting and/or carrying ten pounds, standing and/or walking for about six hours in an eight-hour workday, and sitting for about six hours in an eight-hour workday, all with normal breaks. She is further limited to frequently climbing ramps or stairs, never climbing ladders, ropes, or scaffolds, frequently stooping, occasionally kneeling, occasionally crouching, occasionally crawling, and occasionally reaching overhead bilaterally. The Claimant can understand, carry out, and remember simple instructions and make commensurate work-related decisions, respond appropriately to supervision, coworkers, and work situations, deal with routine changes in work setting, maintain concentration, persistence, and pace for up to and including two hours at a time with normal breaks throughout a normal workday. She is limited to occasional interaction with coworkers, supervisors, and the general public.

Tr. 28. The ALJ determined that Ms. Thompson could perform her past relevant work as a housekeeping cleaner. Tr 35. The ALJ, therefore, concluded that Ms. Thompson was not disabled. Tr. 35-36.

In support of her Motion, Ms. Thompson argues that (1) the ALJ failed to properly evaluate the opinion of consultative psychological examiner Louis Wynne, Ph.D., and that the ALJ's reasons for discounting Dr. Wynne's opinion were illegitimate; (2) the ALJ failed to incorporate certain moderate limitations assessed by the nonexamining State agency psychological consultants; and (3) the ALJ failed to support his RFC finding regarding manipulative limitations with substantial evidence. Doc. 25 at 10-17.

For the reasons discussed below, the Court finds no fault with the ALJ's evaluation of the medical opinion evidence and further finds that the ALJ's RFC is supported by substantial evidence. The Commissioner's determination is, therefore, affirmed.

A.    **Legal Standards**

1.    **RFC Assessment**

Assessing a claimant's RFC is an administrative determination left solely to the Commissioner "based on the entire case record, including objective medical findings and the credibility of the claimant's subjective complaints." *Poppa v. Astrue*, 569 F.3d 1167, 1170-71

(10th Cir. 2009); *see also* 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level or at the Appeals Council review level, the administrative law judge or the administrative appeals judge at the Appeals Council . . . is responsible for assessing your residual functional capacity."); *see also* SSR 96-5p, 1996 WL 374183, at *2 (an individual's RFC is an administrative finding).[6]  In assessing a claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, and review all of the evidence in the record.  *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013); *see* 20 C.F.R. §§ 404.1545(a)(2) and (3), 416.945(a)(2).  The ALJ must consider and address medical source opinions and give good reasons for the weight accorded to a treating physician's opinion.  20 C.F.R. §§ 404.1527(b), 416.927(b)[7]; SSR 96-8p, 1996 WL 374184, at *7.  If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  SSR 96-8p, 1996 WL 374184 at *7.   Further, the ALJ's "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence."  *Wells*, 727 F.3d at 1065 (quoting SSR 96-8p, 1996 WL 374184, at *7).  When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion with citations to specific medical facts and nonmedical evidence, the court will conclude that his RFC assessment is not supported by substantial evidence.  *See Southard v. Barnhart*, 72 F. App'x 781, 784-85 (10th Cir. 2003).  The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review.  *See Spicer v. Barnhart*, 64 F. App'x 173, 177-78 (10th Cir. 2003) (unpublished).

---

[6] The Social Security Administration rescinded SSR 96-5p effective March 27, 2017, only to the extent it is inconsistent with or duplicative of final rules promulgated related to Medical Source Opinions on Issues Reserved to the Commissioner found in 20 C.F.R. §§ 416.920b and 416.927 and applicable to claims filed on or after March 27, 2017.  82 Fed. Reg. 5844, 5845, 5867, 5869.

[7] The rules in this section apply for claims filed *before* March 27, 2017.  20 C.F.R. §§ 404.1527, 416.927.

### 2.   Medical Opinion Evidence

An ALJ evaluates the persuasiveness of medical opinions based on: (1) the degree to which the opinion is supported by objective medical evidence and supporting explanation; (2) how consistent the opinion is with other evidence in the record; (3) the source's treating relationship with the claimant (i.e., how long/frequently the source treated the claimant and for what purpose); (4) whether the source was specialized on the impairment on which he or she is opining; and (5) any other factor tending to support or contradict the opinion. 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The most important factors are "supportability ... and consistency." 20 C.F.R. §§ 404.1520c(a), §§416.920c(a). The SSA does not give "any specific weight, including controlling weight, to any medical opinion(s)." *Id.*

In considering the persuasiveness of medical opinions, the ALJ "must discuss the weight he assigns." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). The ALJ is not required to discuss each factor articulated in the regulations; rather, the ALJ must merely explain his weighing decision with sufficient specificity so as to be capable of review. *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). Put differently, if an ALJ rejects an opinion, he "must then give 'specific, legitimate reasons for doing so.' " *Id.* (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)).

### B.   Consultative Psychological Examiner Louis Wynne, Ph.D.

On June 29, 2018, Ms. Thompson presented to consultative psychological examiner Louis Wynne, Ph.D., for a disability determination examination. Tr. 650-53. Dr. Wynne took various histories, *i.e.,* childhood, education, medical, trauma, mental health, substance abuse, employment, and family. Tr. 651-53. On mental status exam, Dr. Wynne observed that Ms. Thompson maintained good eye contact, was cooperative, alert and well-oriented to purpose

of examination, had an open affect, normal speech, congruent and dysphoric mood, and evinced humor.  Tr. 650.  Dr. Wynne noted that Ms. Thompson's ability to copy a pair of intersecting pentagons was marginal; she could not count backwards from one hundred either by threes or sevens; and she could not perform simple mental arithmetic.  Tr. 650.  However, Dr. Wynne noted that Ms. Thompson remembered and carried out a written three-part set of directions; she spelled two common five letter words backwards; she remembered a set of digits forwards to six; her fund of information was average and her ability to abstract was unimpaired; and her short term memory for both things and words was unimpaired.  *Id.*

> Based on the foregoing, Dr. Wynne assessed that Ms. Thompson
>
> can read and understand basic written instructions but her concentration and ability to persist at simple work tasks are at least moderately impaired.  She could interact with the general public but she would have difficulty interacting with her coworkers and her supervisors.  She also might have difficulty adapting to changes in the workplace.  She could recognize obvious hazards but she could not manage her own benefit payments.

Tr. 653.

The ALJ found Dr. Wynne's assessment to be "somewhat persuasive."  Tr. 34.  The ALJ discussed how Dr. Wynne supported his opinion, and explained that the opinion was "somewhat equivocal" in that Dr. Wynne did not describe how the claimant's moderate limitations in concentration would impact her functioning and ability to carry out basic instructions.  *Id.*  The ALJ also explained that Dr. Wynne's opinion that Ms. Thompson had no limitations in her ability to interact with the general public was not consistent with her testimony that she does better with others she is familiar with rather than strangers.  *Id.*  Finally, the ALJ explained that Ms. Thompson's ability to understand basic written instructions was consistent with records from her own medical sources that demonstrate she has a logical and goal directed thought process and intact memory.  *Id.*

Ms. Thompson argues that the ALJ failed to properly evaluate Dr. Wynne's opinion and that the ALJ's explanations for discounting Dr. Wynne's opinion are illegitimate.  Doc. 25 at 11-15.  In support, Ms. Thompson first explains that the ALJ only found Dr. Wynne's opinion "somewhat persuasive" in part because it was equivocal and failed to describe how Ms. Thompson's moderate limitations would impact her functioning.  *Id.*  Ms. Thompson argues that the ALJ's finding that Dr. Wynne's opinion was "vague" for opining she is at least moderately impaired in her ability to concentrate and persist at simple work tasks is hypocritical and in conflict with federal regulations because use of the term "moderate" is commonly used in medical opinions and the ALJ did not take issue with the nonexamining State agency psychological consultants' use of the word "moderate" to describe certain functional limitations.  Doc. 25 at 11-12.  Next, Ms. Thompson argues the ALJ overlooked and failed to discuss certain medical evidence and medical opinion evidence that were consistent with Dr. Wynne's opinion.  *Id.* at 12-13.  And last, Ms. Thompson argues that the ALJ mischaracterized her testimony regarding her social abilities and failed to appreciate that Ms. Thompson would have difficulty interacting with coworkers and supervisors.  *Id.* at 13-14.  In sum, Ms. Thompson's asserts that Dr. Wynne's opinion is well-supported, consistent with the other evidence in the record, and that it is clear that Ms. Thompson cannot meet the mental demands of unskilled work.  *Id.* at 14-15.

The Commissioner contends that the ALJ accepted that Ms. Thompson had moderate limitations in understanding, remembering, and applying information, in interacting with others, and in concentration, persistence and pace, and that he pointed to specific evidence from Dr. Wynne's assessment to support these limitations.  Doc. 29 at 14.  The Commissioner also contends that the ALJ's determination demonstrates he considered Dr. Wynne's assessment in light of the record as a whole.  *Id.* at 14-17.  For instance, the Commissioner asserts that the ALJ

discussed the treatment notes Ms. Thompson cited and claims the ALJ overlooked, and further

asserts that the ALJ discussed the nonexamining State agency psychological consultants'

conclusions on Ms. Thompson's moderate mental limitations. *Id.* Finally, the Commissioner

argues that the ALJ's discussion of Ms. Thompson's testimony regarding her social limitations

was made in the context of discounting Dr. Wynne's opinion that Ms. Thompson could interact

with the general public and that the ALJ's RFC was more limiting than Dr. Wynne assessed

thereby giving Ms. Thompson the benefit of the doubt. *Id.*

The Court finds no error with the ALJ's evaluation of Dr. Wynne's opinion regarding

Ms. Thompson's ability to do work-related mental activities. The ALJ thoroughly considered

and discussed Dr. Wynne's evaluation report, along with his summary and clinical impressions.

Tr. 25-27, 32-33, 34. The ALJ noted Dr. Wynne's specialty, and that Dr. Wynne examined

Ms. Thompson and reviewed some of her medical history. Tr. 34. The ALJ evaluated the

degree to which Dr. Wynne's opinion was supported by his findings and supporting explanation,

*i.e.,* the ALJ noted Dr. Wynne's observations of Ms. Thompson and Dr. Wynne's notes

regarding his mental status exam findings.[8] *Id.* The ALJ also evaluated the degree to which

Dr. Wynne's opinion was consistent with the other evidence in the record. For example, the ALJ

determined that Dr. Wynne's opinion regarding her ability to interact with the general public was

not consistent with Ms. Thompson's testimony. *Id.* The ALJ also discussed that Dr. Wynne's

opinion that Ms. Thomson could understand basic written instructions was consistent with

records from Ms. Thompson's medical sources. *Id.* The ALJ's evaluation of Dr. Wynne's

---

[8] The ALJ specifically stated that Dr. Wynne "supported his opinion by noting the Claimant had a dysphoric mood, could carry out a written three-part set of directions, her fund of information was average, and her short term memory was intact, but she had difficulty with exercises involving math and reported a history of abuse and discord in her family." Tr. 34.

opinion, therefore, comports with the legal standard for evaluating medical opinion evidence. *See* 20 C.F.R. §§ 404.1520c(c)(1)-(4), 416.920c(c)(1)-(4).

Further, the Court is not persuaded that the ALJ's explanations for finding Dr. Wynne's opinion "somewhat persuasive" are illegitimate. For example, Ms. Thompson argues that the ALJ improperly found Dr. Wynne's assessment was "vague" based on Dr. Wynne's use of the term "moderate" to describe limitations in her ability to concentrate and persist at simple tasks. Ms. Thompson asserts that the ALJ feigns ignorance of the term "moderate" when it is commonly used in rendering medical opinions in the Social Security context. The Court does not agree. Here, Dr. Wynne assessed that Ms. Thompson "can read and understand basic written instructions but her concentration and ability to persist at simple work tasks are at least moderately impaired." Tr. 653. In turn, the ALJ found this assessment to be "somewhat equivocal" because Dr. Wynne assessed that Ms. Thompson had moderate limitations in her ability to concentrate and persist at simple tasks, but did not describe how that moderate limitation would impact her ability to carry out basic instructions. *Id.* In other words, the ALJ properly noted that Dr. Wynne assessed a moderate limitation in the area of concentration, persistence and pace, but did not do so in the area of understanding, remembering and carrying out instructions thereby leaving it open to interpretation, *i.e.,* it was "somewhat equivocal." Given this plain reading of the ALJ's discussion, Ms. Thompson has not presented any evidence that the ALJ was unfamiliar with or unfairly exacting of Dr. Wynne's use of the term "moderate." Ms. Thompson's argument, therefore, is unfounded.

Ms. Thompson next argues that the ALJ overlooked that Dr. Wynne's opinion regarding her difficulty interacting with coworkers and supervisors and adapting to changes in workplace was consistent with other evidence in the record. In support, Ms. Thompson cites certain

treatment notes in which she reported suicidal thoughts, hearing voices, anxiety, depression, and symptoms related to her PTSD.  Ms. Thompson also points to the nonexamining State agency psychological consultants' opinions who found moderate limitations in her ability to understand, remember or apply information; moderate limitations in her ability to concentrate, persist, or maintain pace; and moderate limitations in her ability to interact with others.[9]  Ms. Thompson's argument, however, is unavailing because the ALJ's determination demonstrates that he considered the evidence Ms. Thompson cited and described how the overall evidence in the record supported his decision.  Tr. 34-35.  For example, the ALJ discussed that at the time Ms. Thompson reported having suicidal thoughts and hearing voices, she also reported it was "after smoking strong marijuana," and that despite experiencing some anxiety and PTSD symptoms around the same time, she was getting out and walking and having good energy and concentration.  Tr. 32.  The record supports these findings.  Tr. 671-74, 676-79.  The ALJ also discussed that Ms. Thompson's mental health treatment notes soon thereafter indicated she maintained good eye contact, reported pleasant or good moods, denied depressive or anxious symptoms, that her thought process was goal directed, and her memory was grossly intact.  Tr. 32.  The record supports these findings.  *See, inter alia*, Tr. 683, 692, 699, 703, 707, 713, 716, 720, 740, 749, 751, 774.  Moreover, the ALJ evaluated the nonexamining State agency psychological consultant opinion evidence and either adopted their findings or tempered them to Ms. Thompson's benefit.[10]  *See Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (finding that an ALJ does not commit reversible error by electing to temper findings for the claimant's

---

[9] *See* Section III.C, *infra*.

[10] *See id*.

benefit).  As such, Ms. Thompson has failed to demonstrate that the ALJ overlooked evidence or failed to consider how consistent Dr. Wynne's opinion was with other evidence in the record.

Ms. Thompson's last argument is equally unpersuasive.  Ms. Thompson argues that in evaluating Dr. Wynne's opinion evidence the ALJ mischaracterized Ms. Thompson's testimony regarding her ability to interact with others.  Ms. Thompson argues that the ALJ stated Ms. Thompson testified she does better with others she is familiar with rather than strangers but that her testimony was that she can be around strangers *only* if she is accompanied by a family member.  Doc. 25 at 13-14.  Ms. Thompson asserts that given her need for familial support when socially interacting, she would have difficulty interacting with co-workers and supervisors.  *Id.* Ms. Thompson, however, mischaracterizes the ALJ's discussion.  In his discussion, the ALJ was specifically addressing Dr. Wynne's assessment that Ms. Thompson had no limitations in her ability to interact with the general public.  Tr. 34.  The ALJ disagreed with Dr. Wynne's assessment and cited Ms. Thompson's testimony in support.  *Id.*  As such, the ALJ's discussion of Ms. Thompson's testimony was not in the context of addressing Dr. Wynne's assessment that Ms. Thompson would have difficulty interacting with her coworkers and supervisors, which the ALJ did not dispute and adopted in the RFC.

The ALJ further supported the social limitations he assessed by discussing that Ms. Thompson reported she was able to go out alone, could shop in stores, met people online, dressed up and handed out candy from her car at Halloween, and went out on New Year's Eve and had a good time.  Tr. 27.  The ALJ, therefore, determined based on the record as a whole that Ms. Thompson's limitations in social interaction were accommodated with occasional interaction with coworkers, supervisors and the general public.  Tr. 33.  As such, Ms. Thompson has failed

to demonstrate that the ALJ improperly evaluated Dr. Wynne's opinion by mischaracterizing her testimony regarding her ability to socially interact.

### C.    Nonexamining State Agency Psychological Consultants

On August 6, 2018, nonexamining State agency medical consultant Richard Sorenson, Ph.D., reviewed the medical evidence record at the initial level of review.  Tr.95-96, 101-03, 111-113, 117-119.  Dr. Sorenson prepared a Psychiatric Review Technique ("PRT") and rated the degree of Ms. Thompson's functional limitation in the area of understanding, remembering or applying information as *mild*; the area of interacting with others as *moderate*, in the area of maintaining concentration, persistent and pace as *moderate*, and in the area of adaptation as *mild*. Tr. 95, 112.  Dr. Sorenson also prepared a Mental Residual Functional Capacity Assessment ("MRFCA") in which he found in Section I that Ms. Thompson had *moderate limitations* in her ability to (1) understand and remember detailed instructions; (2) carry out detailed instructions; (3) maintain attention and concentration for extended periods; (4) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (5) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (6) interact appropriately with the general public; (7) accept instructions and respond appropriately to criticism from supervisors; and (8) get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  Tr. 102-03, 118-119.  In Section III of the MRFCA, Dr. Sorenson assessed that "claimant can understand, remember and carry out simple instructions, make simple decisions, attend and concentrate for two hours at a time, interact adequately with co-workers and supervisors, and respond appropriately to changes in a routine work setting." *Id*.

On March 21, 2019, nonexamining State agency medical consultant Deanne Gallavan,

Ph.D., reviewed the medical evidence record at reconsideration.  Tr. 132-34, 138-40, 150-52,

156-58.  Dr. Gallavan prepared a PRT and rated the degree of Ms. Thompson's functional

limitation in the area of understanding, remembering or applying information as *moderate*; the

area of interacting with others as *none*, in the area of maintaining concentration, persistent and

pace as *moderate*, and in the area of adaptation as *none*.  Tr. 132, 150.  Dr. Gallavan also

prepared a MRFCA in which she found in Section I that Ms. Thompson had moderate limitations

in her ability to (1) understand and remember detailed instructions; and (2) carry out detailed

instructions.  Tr. 139-40, 157-58.  In Section III, Dr. Gallavan assessed that "claimant can

understand, remember and carry out simple instructions, make simple decisions, attend and

concentrate for two hours at a time, interact adequately with co-workers, supervisors and the

general public.  The claimant can respond appropriately to changes in a routine work setting."

Tr. 140, 158.

> The ALJ found their opinions were "somewhat persuasive."  Tr. 35.  He explained that
>
> [w]hile the ratings of the "paragraph B" criteria differed, a reduction to understand, remember, and carry out simple instructions in consistent with the Claimant's performance on the cognitive exercises during her consultative examination.  It is also consistent with the Claimant's reports to her mental health provider that her concentration was good even though she had low energy or low motivation, at times.  However, although a moderate limitation in interacting with others was found at the initial level, no accommodation was provided in the residual functional capacity.  A moderate limitation in interacting with others is consistent with exams describing the Claimant as irritable/angry or depressed/sad along with her description of conflicts with her coworkers and with the public she interacted with.  Accordingly, I have further reduced the Claimant's residual functional capacity to involve only occasional contact with others.

Tr. 35 (citations omitted).

Ms. Thompson argues that Dr. Sorenson found certain moderate limitations in Section I

that the ALJ failed to adopt, *i.e.,* that Ms. Thompson had a moderate limitations in her ability to

16

be punctual, to work within a schedule, to maintain regular attendance, and to complete a normal workday or workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without unreasonable number and lengths of rest periods.  Doc. 25 at 15.

The Commissioner contends that the ALJ incorporated the State agency psychological consultants' moderate limitations in punctuality, attendance, persistence, and pace, and adopted their ultimate conclusions, except the ALJ explained he found Ms. Thompson had more limited social interaction than they assessed.  Doc. 29 at 18.

The Tenth Circuit has specifically addressed the ALJ's responsibility in evaluating a State agency psychological consultant's MRFCA in light of the instructions printed on the forms and certain sections of the POMS that describe the separate functions of Sections I and III. Tenth Circuit case law instructs that an ALJ may not "turn a blind eye to moderate Section I limitations" and that

> [i]f a consultant's Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, or if it contradicts limitations marked in Section I, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding.

*Carver v. Colvin*, 600 F. App'x 616, 619 (10th Cir. 2015) (unpublished).[11]  Tenth Circuit case law further instructs that there is no reversible error in evaluating opinion evidence or assessing a

---

[11] In Section I, the State agency consultant found that the claimant had *moderate* limitations in the ability to (1) understand and remember detailed instructions; (2) carry out detailed instructions; (3) interact appropriately with the general public; and (4) accept instructions and respond appropriately to criticism from supervisors.  *Carver v. Colvin*, 600 F. App'x 616, 618 (10th Cir. 2015).  In Section III, the State agency consultant assessed that the claimant could "perform simple tasks with routine supervision, relate to supervisors and peers on a superficial work basis, relate superficially to the general public on a limited basis, and adapt to simple work situation."  *Id.*  The claimant argued that the State agency consultant's Section III assessment failed to account for the Section I moderate limitation in accepting instructions and responding appropriately to criticism from supervisors.  *Id.* at 618-19.  The Court disagreed and held that the Section III assessment that claimant could relate to supervisors and peers on a superficial work basis adequately encapsulated the Section I moderate limitation in claimant's ability to accept instructions and respond appropriately to criticism from supervisors.  *Id.* at 619.  The Court further held that the ALJ's RFC sufficiently captured the essence of the State agency consultant's Section III assessment by limiting claimant to simple work and stating that claimant could "interact with co-workers and supervisors, under routine supervision."  *Id.* at 620.

17

claimant's RFC when an ALJ properly accounts for the effects of the limitations enumerated in

Section I of the MRFCA.  *See Nelson v. Colvin*, 655 F. App'x 626, 629 (10th Cir. 2016) (finding

no reversible error regarding the ALJ's mental RFC assessment because the ALJ effectively

accounted for *all* the limitations indicated in Section I of the MRFCA) (emphasis in original);[12]

*Lee v. Colvin*, 631 F. App'x 538, 541 (10th Cir. 2015) (finding no reversible error regarding the

ALJ's RFC assessment because the ALJ did not ignore the Section I limitations and the RFC

assessment reflected the moderate limitations identified in Section I of the MRFCA);[13] *Fulton v.*

*Colvin*, 631 F. App'x 498, 502 (10th Cir. 2015) (finding that the ALJ did not err in evaluating

opinion evidence where he discussed only certain Section III findings because the ALJ

acknowledged the distinction between Section I and Section III of the MRFCA and the Court

found no contradiction between the two sections);[14] *Carver*, 600 F. App'x at 619 (finding no

---

[12] In Section I, the State agency consultant found the claimant had *moderate* limitations in the ability to maintain attention and concentration for extended periods, and *marked* limitations in the ability to understand and remember detailed instructions, carry out detailed instructions, and interact appropriately with the public. *Nelson,* 655 F. App'x 626, 628 (10th Cir. 2016.)  In Section III, the State agency consultant assessed that "claimant is capable of carrying out simple instructions with routine supervision.  Claimant is capable of interacting appropriately with supervisors and coworkers on a superficial basis but not with the general public.  Claimant can adapt to a work situation." *Id.* at 629.  The Court noted that the ALJ, in turn and without error, incorporated the Section III findings into the RFC. *Id.* The Court further noted that "[m]ore to the point, by limiting [claimant] to unskilled work, the ALJ effectively accounted for *all* the limitations noted in Section I[.]" *Id.* (emphasis in original).  The Court  explained that "[e]ven though [the State agency consultant] noted marked limitations in [claimant's] ability to remember detailed instructions, carry out detailed instructions, and interact appropriately with the public, unskilled work does not require these abilities, nor does it require the ability to maintain attention and concentration for extended periods[.]" *Id.*

[13] In Section I, the State agency consultant found the claimant had *moderate* limitations in the ability to (1) maintain attention and concentration for extended periods; (2) accept instructions and respond appropriately to criticism from supervisors; and (3) get along with coworkers or peers without distracting them or exhibiting behavioral extremes." *Lee v. Colvin*, 631 F. App'x 538, 542 (10th Cir. 2015). In Section III, the State agency consultant assessed that claimant could perform simple tasks, work with routine supervision, relate to supervisors on a superficial basis, and relate to peers on a superficial basis. *Id.*  The ALJ adopted the Section III assessment. *Id.* at 541.  The Court held that the Section III narrative and the ALJ's RFC "explained, accounted for, and delimited each of the moderate limitations expressed in the Section I of the MRFCA," and there was no error. *Id.*

[14] In Section I, the State agency consultant found the claimant had moderate limitations in the ability to (1) work in coordination with or proximity to others without being distracted by them; and (2) respond appropriately to changes in the work setting. *Fulton v. Colvin*, 631 F. App'x 498, 501-02 (10th Cir. 2015).  The State agency consultant found the claimant had marked limitations in the ability to interact appropriately with the general public. *Id.*  In Section III, the State agency consultant assessed that the claimant was able to perform simple and some complex tasks under

reversible error regarding the ALJ's mental RFC assessment because the ALJ sufficiently captured the essence of psychological consultant's Section III narrative which had adequately encapsulated the Section I limitations).  More recently in *Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016), the Tenth Circuit reaffirmed that moderate limitations found in Section I of the MRFCA serve only as an aid to the consultant's assessment and that the Court should compare the ALJ's RFC findings to the consultant's narrative opinion and not the Section I notations of moderate limitations.[15] [16]  *Id.* at 1269 n.2.

Applying the Tenth Circuit's guidance here, the Court finds that the consultants' Section III narrative assessments accounted for all of the moderate limitations they found in Section I. As such, the consultants' narratives are substantial evidence upon which the ALJ can rely.

---

ordinary supervision, able to interact with co-workers and supervisors for incidental work purposes but should avoid public contact, and able to adapt to some work change.  *Id.*  The claimant argued that the ALJ erred by failing to account for certain of the State agency consultant's Section I findings.  *Id.*  The Court held that the ALJ properly looked to the Section III narrative as the State agency consultant's opinion regarding mental RFC because the Section III assessment did not contradict the effects of the Section I limitations.  *Id.*

[15] In *Smith*, the psychological consultant found in Section I of the MRFCA that the claimant had moderate limitations in the ability to (1) maintain concentration, persistence, and pace; (2) remain attentive and keep concentration for extended periods; (3) work with others without getting distracted; (4) complete a normal workday and work-week without interruption for psychologically based symptoms; (5) perform at a consistent pace without excessive rest periods; (6) accept instructions and respond appropriately to criticism by supervisors; (7) get along with coworkers or peers without distracting them or engaging in behavioral extremes; and (8) respond appropriately to changes in workplace; and (9) set realistic goals or independently plan.  *Id.*  The consultant applied the findings and concluded in Section III that the claimant could (1) engage in work that was limited in complexity and (2) manage social interactions that were not frequent or prolonged. 821 F.3d at 1269.  The ALJ, in turn, arrived at a similar assessment, concluding that the claimant (1) could not engage in face-to-face contact with the public and (2) could engage in only simple, repetitive, and routine tasks.  *Id.* at 1269.  The Court favorably cited *Lee v. Colvin*, 631 F. App'x 538 (10th Cir. 2015) (unpublished), as an example of where the administrative law judge did not repeat the moderate limitations found in Section I, but incorporated the limitations by stating how the claimant was limited in the ability to perform work-related activities.  *Id.*  The Court also cited *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015), wherein the Court held that an administrative law judge can account for moderate limitations by limiting a claimant to particular kinds of work activity.  *Id.*  Based on the reasoning in *Lee*, the Court rejected the claimant's argument that the ALJ should have assessed additional nonexertional limitations.  *Id.*

[16] Some judges in this District have declined to follow *Smith* on the grounds that it is inconsistent with *Haga v. Astrue*, 482 F.3d 1205 (10th Cir. 2007) and *Frantz v. Astrue*, 509 F.3d 1299 (10th Cir. 2007) and that one panel of the circuit court cannot overrule another.  *See, e.g., Silva v. Colvin*, 203 F.Supp.3d 1153 (D.N.M. 2016), *Cordova v. Berryhill*, Civ. No. 17-611 SMV, 2018 WL 2138647, at *7 (D.N.M. May 9, 2018); *Jones v. Berryhill*, Civ. No. 15-842 LF, 2017 WL 3052748, at *5 n.6 (D.N.M. June 15, 2017).

*Fulton,* 631 F. App'x at 502.  In turn, the ALJ's RFC reflects that he adopted the consultants'

Section III assessments in full, except for finding that Ms. Thompson had greater limitations in

her ability to socially interact.  *See Chapo,* 682 F.3d at 1288.  As such, the Court finds the ALJ's

RFC accounted for and incorporated all of the moderate limitations assessed by the

nonexamining State agency psychological consultants and that there is no error.

### D.  <u>Manipulative Limitations Based on Carpal Tunnel Syndrome</u>

At step two, the ALJ discussed Ms. Thompson's carpal tunnel syndrome as follows:

> In terms of the Claimant's alleged carpal tunnel syndrome, the Claimant was given cock-up hand splints in early 2017 after complaining of hand numbness and having a positive Tinel's and Phalen's signs on exam.  In early 2018, the Claimant complained of mild increased numbness and tingling in her right hand.  However, her Tinel's and Phalen's signs were negative at that time.  Additionally, at the time of her consultative examination in June 2018, she was able to lift, carry, and handle light objects, maintained full strength and intact sensation, and had no deficits in range of motion of the fingers or wrists.

> In 2019, the Claimant reported she was able to do beadwork as a hobby.  She did report an increase in symptoms in June 2019 when she reported it felt like her whole left arm got numb.  She reported difficulty picking things up and pouring.  She had extreme tenderness at the lateral epicondyle and pain at the lateral epicondyle with passive wrist flexion with her arm extended.  She was diagnosed with lateral epicondylitis on the left.  She was given a tennis elbow band, instructed on stretches, and prescribed a short course of nonsteroidal anti-inflammatory medication.  In August 2019, the Claimant's therapist reported the Claimant had reduced grip at certain objects with a limited ability to engage in her arts and crafts.  The Claimant related this to her recent diagnoses of tennis elbow.

> The Claimant was evaluated by orthopedic specialists in November 2019 and had a mild reduction in strength of the APB muscles of both hands and a weak grip strength.  She had positive Tinel's and compression tests.  There was also decreased sensation to light touch in the median nerve distribution, bilaterally.  A carpal tunnel release was performed on the left hand in January 2020.  The Claimant testified she has regained feeling in the palm of her left hand.  She also testified she can still write and would be able to do her cashier job, she just could not lift more than 20 pounds.  Accordingly, the medical and other evidence shows the Claimant was diagnosed with carpal tunnel prior to her alleged onset date but treatment was effective and she did not have any functional limitations until June 2019 when she had worsening and a compounding condition involving lateral epicondylitis.  However, the Claimant had surgery on her left hand within one year.  At her January

> 2020 hearing she testified to some improvement already in the left hand and she was going to have surgery on the right hand. This is consistent with a finding that Claimant's carpal tunnel syndrome is nonsevere because it has not had more than a minimal effect on her ability to carry out basic work activities for a continuous period of 12 months or more.

Tr. 24 (citations omitted). At step four, the ALJ discussed Ms. Thompson's testimony regarding her carpal tunnel syndrome and discussed the medical evidence related to Ms. Thompson's upper extremity impairments. Tr. 29-31. The ALJ concluded that limiting Ms. Thompson to light exertional work would limit aggravation of her shoulder and neck pain and was consistent with Ms. Thompson's testimony that she could lift 20 pounds even with her carpal tunnel. Tr. 31. The ALJ went on to discuss certain postural and manipulative limitations he assessed to limit aggravation of neck and shoulder pain, as well as Ms. Thompson's alleged back and knee pain. *Id*.

Ms. Thompson argues that the ALJ's finding that her carpal tunnel syndrome was not severe at step two was contrary to law and to the evidence. Doc. 25 at 16. She further argues that substantial evidence supports limitations in handling and fingering at step four, which would eliminate the job of housecleaner. *Id.* Ms. Thompson argues that the record provides ample support for her claims that she has difficulty picking up and holding onto items, as well as clinical findings regarding upper extremity impairments beginning in 2017. *Id.*

The Commissioner contends that the ALJ reasonably considered Ms. Thompson's alleged manipulative limitations when he limited her to occasional overhead reaching. Doc. 29 at 19-21. In doing so, the Commissioner asserts that the ALJ properly considered Ms. Thompson's testimony, the medical record evidence, and the medical opinion evidence, and made specific findings regarding Ms. Thompson's abilities to manipulate. *Id.* The Commissioner argues that Ms. Thompson is asking the Court to reweigh the evidence which it should decline to do. *Id.*

21

The Court finds no error in the ALJ's assessment of Ms. Thompson's carpal tunnel syndrome and finds no support for Ms. Thompson's allegation that the ALJ erred in finding it to be nonsevere at step two and that additional manipulative limitations were warranted at step four. To begin, even if the ALJ's finding that Ms. Thompson's carpal tunnel was nonsevere, as opposed to severe, was erroneous, an error at step two is harmless so long as the ALJ finds at least one condition to be severe, so that the five-step sequential evaluation continues. *Oldham v. Astrue,* 509 F.3d 1254, 1256-57 (10th Cir. 2007) (no error in ALJ's failure to include claimant's reflex sympathetic dystrophy as severe impairment at Step Two); *Carpenter v. Astrue,* 537 F.3d 1264, 1266 (10th Cir. 2008) (any error at step two was harmless when ALJ properly proceeded to next step of evaluation sequence).  The ALJ did so here.  Therefore, because the ALJ found severe impairments at step two, there is no reversible error at this step.

That aside, the ALJ's consideration of Ms. Thompson's carpal tunnel was exhaustive. Additionally, Ms. Thompson points to no objective evidence or subjective complaints to medical providers that the ALJ did not consider in his determination or that support additional functional limitations related to carpal tunnel syndrome.  Indeed, the ALJ adopted the manipulative limitations assessed by the nonexamining State agency medical consultants.[17]  Moreover, the

---

[17] On June 3, 2018, consultative examiner Athanasios Manole, M.D., examined Ms. Thompson in light of her alleged impairments, including carpal tunnel syndrome.  Tr. 641, 47.  On physical exam, Dr. Manole indicated, *inter alia*, that Ms. Thompson had normal muscle tone and bulk in her wrist flexion, wrist extension, finger abduction, and hand grip. Tr. 644.  He noted that Ms. Thompson was able to lift, carry and handle light objects.  *Id.*  He also noted that Ms. Thompson had normal range of motion in her wrists and hands.  Tr. 645.  In sum, Dr. Manole assessed that Ms. Thompson had no significant physical abnormalities or limitations noted on examination in relation to, *inter alia*, carpal tunnel.  Tr. 646.

On August 28, 2018, nonexamining State agency medical consultant Susan Clifford, M.D., reviewed the medical evidence record at the initial state of consideration.  Tr. 97-100, 114-117.  She assessed that Ms. Thompson could perform light exertional work with certain postural and manipulative limitations, *i.e.,* limited overhead reaching.  Tr. 98-99, 15-116.

On March 20, 2019, nonexamining State agency medical consultant Nabeel Uwaydah, M.D., reviewed the medical evidence record at reconsideration.  Tr. 135-38, 153-56.  Dr. Uwaydah similarly assessed that Ms. Thompson could

ALJ thoroughly considered and discussed the more recent medical evidence record and

Ms. Thompson's testimony related to her carpal tunnel syndrome and described how the

evidence supported his decision.  The Court, therefore, finds the ALJ's RFC assessment is

supported by substantial evidence.

## IV.  <u>Conclusion</u>

For the reasons stated above, Ms. Thompson's Motion to Reverse or Remand

Administrative Agency Decision (Doc. 25) is **DENIED.**

**JOHN F. ROBBENHAAR**
**United States Magistrate Judge,**
**Presiding by Consent**

---

perform light exertional work with certain postural and manipulative limitation, *i.e.,* limited overhead reaching.  Tr.
136, 154.